**EL PASO LAND IMPROVEMENT CO. v. CRAWFORD. (No. 859–4595.)**

(Commission of Appeals of Texas, Section A. March 2, 1927.)

**1. Easements ⬤⟲24—Deed conveying land and rights and appurtenances held to transfer eastments over adjoining lands.**

Deed conveying ground and "all and singular the rights and appurtenances thereto in any wise belonging" *held* to transfer whatever dominance the land and its fixtures had by way of easement over adjoining land and its user.

**2. Deeds ⬤⟲119—Identity of things conveyed in case of latent ambiguity is question of law and fact for jury or for court on answers to special issues.**

In case of latent ambiguity, identity of things and rights conveyed is a mixed question of law and fact to be determined by the jury under proper instructions, if the case be submitted on a general charge or to be determined by the court, in view of facts found by jury in answer to special issues.

**3. Easements ⬤⟲22—Purchaser of part of tract takes subject to burdens or benefits from other part, where alterations by owner of both are palpable and manifest.**

Though owner cannot subject part of land to easement in favor of other part, purchaser of part takes subject to burdens of, or benefits from, other part, where alterations of owner of whole tract are palpable and manifest.

**4. Easements ⬤⟲24—If parties to deed conveying building, rights, and appurtenances understood rooms overhanging adjoining property to be part of building, easement therefor passed so far as grantor had power.**

Under deed conveying hotel and "all and singular the rights and appurtenances thereto in any wise belonging," easement of space necessary for rooms overhanging adjoining property passed in so far as grantor had power to grant the easement, if the parties intended and understood that the overhanging rooms were a part of the building.

**5. Deeds ⬤⟲143—In case of either express or implied reservation, construction favors grantee.**

Either express or implied reservation in deed will be construed favorably to grantee and unfavorably to the grantor.

**6. Easements ⬤⟲42—Deed conveying use of walls "adjacent to" boundary lines conveyed such located close, near to, or in immediate neighborhood thereof.**

Deed conveying joint use and possession of any and all walls of hotel adjacent to surface boundary lines conveyed such use and possession as to any wall located close or near to or in the immediate neighborhood of the surface boundary lines as well as those coincident therewith; such being the popular and technical import of the words "adjacent to."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Adjacent.]

**7. Estoppel ⬤⟲22(2), 78(3)—Owner held estopped to deny easement for rooms overhanging property by deed to him and contract joined in by him.**

Owner of property adjoining hotel *held* estopped to deny easement of space necessary for hotel rooms overhanging his property by reason of recitals in deed to him of his property, recognizing the form and location of the entire hotel, its relation to the land, and the right and purpose to continue it, and by recitals in contract to sell hotel affirming easement in which he joined.

**8. Trial ⬤⟲350(3)—Where deed to hotel conveyed easement for rooms overhanging adjoining property, if parties intended, refusing issue whether rooms were indicated as part of hotel held error.**

Where deed of hotel conveyed easement of space necessary for rooms overhanging adjoining property, if the parties to the deed so intended, refusing to submit special issue whether representative of grantor and of plaintiff seeking removal of rooms pointed out portion of

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

hotel extending over adjoining property, and, if so, what portion, *held* error.

**9. Trial ⟨≈⟩350(3)—Where deed to hotel conveyed easement for rooms overhanging adjoining property, if parties intended, refusing issue whether parties believed they were to get all hotel held error.**

Where deed to hotel conveyed easement for space necessary for hotel rooms overhanging adjoining property, if the parties to the deed so intended, refusing to submit special issue whether purchasers under contract to purchase preceding deed believed, when contract to purchase was made, that they were to get all of the hotel as it then existed, *held* error..

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by L. M. Crawford, trustee, against the El Paso Land Improvement Company, and cross-action by the El Paso Land Improvement Company against L. M. Crawford, trustee. Judgment for plaintiff was reformed, and, as reformed, affirmed by the Court of Civil Appeals (280 S. W. 914), and defendant brings error. Reversed and remanded.

Goggin, Hunter & Brown, of El Paso, for plaintiff in error.

Lea, McGrady, Thomason & Edwards, and Jones, Hardie & Grambling, of El Paso, for defendant in error.

NICHELS, J. This case has been before the Court of Civil Appeals twice. In the opinions of that court (201 S. W. 233, and 280 S. W. 914) the controversy is stated at length; hence we do not undertake a restatement here, except in so far as may be necessary to exhibit the issues which we believe determine the case on this appeal.

Prior to February 26, 1906, Bailey Hotel Company, a corporation, owned a tract of land in the city of El Paso. On February 26, 1906, it conveyed to Crawford, trustee, a portion of the land, and on January 29, 1907, it conveyed the remainder to El Paso Land Improvement Company. A plat of the entire tract and the parts thus conveyed is reproduced on page 235 of 201 S. W. Long prior to the first-mentioned conveyance Bailey Hotel Company, or its predecessors in title, had erected upon the tract a building which was used for hotel purposes, and which had become generally known as the Angelus Hotel. The building was so constructed as that certain rooms, porches, etc., thereof in the second and higher stories overhung (to the extent of about six feet) the line, which in virtue of the two conveyances became the surface boundary between the land acquired by Crawford, trustee, and that acquired by the improvement company. The building was thus originally built, and its form has remained unchanged.

In time a controversy arose. Crawford claimed that maintenance of the overhanging rooms, etc., was an invasion of his premises, and was without authority of law or his consent, and constituted a nuisance, as well as a cloud, upon his title. The improvement company claimed that the deed to it by mistake, etc., omitted conveyance of the surface strip in dispute, and that Crawford and the Bailey Hotel Company were bound to convey it because of the contract entered into between improvement company's predecessors on the one hand and Crawford and officers, etc., of the Bailey Hotel Company on the other, on January 12, 1907. This suit resulted. Therein Crawford, as plaintiff, sought judgment for the land under the overhanging rooms, etc., and compelling their removal, alleging former use of them under claim of right on the part of improvement company, but which use, it was alleged, was "without authority of law or the consent of this plaintiff." The improvement company answered with a general denial and averments by way of cross-action, in which it alleged the mutual intent of parties to the contract of January 12, 1907, and the obligation of Crawford et al. to convey, or to cause to be conveyed, "the real estate and improvements" constituting the Angelus Hotel. In elaboration it was averred that the obligation and intent to convey the Angelus Hotel included the obligation and intent to fix the surface boundary coincident with the outside lines of the overhanging rooms, porches, etc. The improvement company defended upon its general denial, and sought affirmative relief—i. e., compelled performance of the contract obligations—upon its cross-action.

The jury, in response to special issues, found that the overhanging rooms, etc., were above "all of the land in controversy," and that the improvement company, at the time it received its deed, did not believe that the deed covered all of the land covered by the Angelus Hotel. Two other issues were submitted in words as follows:

"At the time of the execution of the contract of January 12, 1907, was it the intention of L. M. Crawford to sell, of the land and buildings of said block, only that property of block 2, Mills' map of the city of El Paso, Texas, lying east of the east lines described in the deed from the Bailey Hotel Company to L. M. Crawford, trustee, of date February 26, 1906?"

"At the time of the execution of the contract of January 12, 1907, was it the intention of U. S. Stewart and his associates" (i. e. the predecessors in interest of the Improvement Company) "to buy, of the land and buildings of said block, only that part of the property of block 2, Mills' map of the city of El Paso, Tex., lying east of the east lines described in the deed from Bailey Hotel Company to L. M. Crawford, trustee, of date February 26, 1906?"

Each of those questions was answered "Yes."

The improvement company requested, and the court refused the submission of various issues, amongst which are those reading as follows:

"Do you find from the evidence that U. S. Stewart and his associates, when contract of date January 12, 1907, was entered into, believed that they were to get under said contract all the Angelus Hotel as it then existed?"

"Did H. H. Bailey" (i. e., president of Bailey Hotel Company and representative of that company and of Crawford) "at any time in the negotiations previous to and leading up to the signing of the contract of sale of January 12, 1907, point out or show to W. W. Turney, W. F. Payne, U. S. Stewart" (i. e., the predecessors of the Improvement Company) "or any of them, any part or portion of the building extending over any of the property in dispute as being a part or portion of the Angelus Hotel?"

"If you have answered the above question in the affirmative, then describe what part or portion was so pointed out or shown by the said H. H. Bailey to the said parties or any of them."

Upon reasoning to be stated, we believe refusal of the district judge to submit the issues thus requested was error.

[1, 2] The deed to the improvement company conveyed the ground described therein and "all and singular the rights and appurtenances thereto in anywise belonging." As a matter of course, the conveyance transferred whatever dominance the tract of land and its fixtures had, by way of easement, over the other land and its user. 13 Cyc. 639, 640. The deed itself is evidence of that intent and result. So far as identity of the ground itself is concerned, the instrument precludes uncertainty. But in respect to the appurtenances and rights attached thereto, and so conveyed, extrinsic evidence must be considered, for those rights are not described in the paper. As in other cases of latent ambiguity, identity of the things and rights conveyed, and so intended, becomes a mixed question of law and fact to be determined by the jury under proper instructions of the court, if the case be submitted on a general charge (Kingston v. Pickins, 46 Tex. 99; Camley v. Stanfield, 10 Tex. 546, 60 Am. Dec. 219), or to be determined by the court in view of relevant facts determined by the jury in response to special issues.

[3, 4] The record exhibits evidence tending to show that Stewart and associates thoroughly understood that they were to acquire the Angelus Hotel as it existed on January 12, 1907. That building rested upon the ground which was conveyed to the improvement company, but certain portions of it above the ground extended over the boundary line. It was given this form at a time when its owner had full title to all of the land. Its form thus given was permanent, and use of space beyond the artificial line subsequently impressed upon the ground was essential to ownership and user of the building as erected and as it now exists. "Strictly speaking, a man cannot subject one part of his property to another by an easement, for no man can have an easement on his own property; but he obtains the same right by the exercise of another right, the general right of property; but he has not thereby permanently altered the quality of two parts of his heritage; and if, after the annexation of peculiar qualities, he alienates one part of his heritage, it seems but reasonable that, if the alterations thus made are palpable and manifest, that a purchaser should take the lands burthened or benefited, as the case may be, by the qualities which the previous owner had undoubtedly the right to attach to it." Gale & Whatley on Easements, 40.

If the parties intended and understood that the overhanging rooms, etc., were a part of the building which was being sold as a fixture upon or part of the tract of ground, and so far as the hotel company then had power, the use of space necessary for maintenance of the rooms, etc., passed as an easement to the improvement company in the deed of January 29, 1907. Howell v. Estes, 71 Tex. 690, 12 S. W. 62.

Answers to the questions propounded in the special issues requested and refused would have disclosed the existence or lack of existence of that understanding and intention, and thus the question of the identity of a part of the subject-matter of the conveyance would have been settled.

[5] The materiality of the conveyance of the easement as between Bailey Hotel Company and the improvement company and their mutual intent depends, of course, upon existence of power in the hotel company to convey, and this, in turn, relates to the effect of the prior deed to Crawford, trustee. Whether the hotel company retained ownership of the easement in spite of that deed is to be determined upon principles essentially different from those which govern expressed or implied grants, for the question is one of expressed or implied reservation. In both cases construction favors the grantee, with the result that, in the case of a purely implied reservation, it is generally held that the easement must be "strictly one of necessity" (14 Cyc. 1171, and cases cited in note 21), but there are many cases in which the doctrine of strict or absolute necessity is not approved. Whether the one rule or the other is the law in Texas, and whether the record shows an absolute necessity, is rendered immaterial by recitals in Crawford's deed and in the contract which he signed on January 12, 1907, viewed in the light of undisputed facts.

[6, 7] While the deed to Crawford plainly conveys the ground in dispute, it contains

recitals which as plainly show that the parties were then contracting with reference to the Angelus Hotel building as it existed. The easement of ingress and egress through the building is therein conveyed to Crawford. In addition, the deed contains this language:

"It is also agreed and understood, as a part of said consideration, that the said Crawford, trustee, and his assigns, and those for whom he holds title, is to have the right and easement, for all time, in the joint use of any wall or walls of what is known as the Angelus Hotel, or any part thereof which will be adjacent to the lines hereinbefore drawn" (i. e., the surface boundary lines). * * * "And it is further agreed and understood that either the Bailey Hotel Company or its successors or assigns, and the said Crawford and those for whom he holds title, and his or their assigns, shall have the right at any time to increase the height of any of said walls at their own and proper cost and expense, but should either of said parties or any of them, or their assigns, afterwards desire to use and exercise the right to use said wall or walls so increased in height, or length, that then in that event the parties so afterward using said wall or walls or portion of same, shall pay or cause to be paid a pro rata value of same, and neither party shall be required to give over possession or the right to use the said wall or walls until after compensation has been made therefor or suitable arrangements entered into for the use of said wall or walls," etc.

Subsequent to the conveyance just mentioned, and on January 12, 1907, the contract of sale referred to was made. The instrument evidencing the contract contains these recitals:

"This agreement made and entered into this the day and date herein last written by and between L. M. Crawford, for himself and as trustee, H. H. Bailey and Hattie Bailey, parties of the first part, being the owners of that certain property known as the Angelus Hotel, situate on Main street and Mesa avenue, * * * and being the owners of all the capital stock of the Bailey Hotel Company holding said property, improvements thereon situated, and the personal property, furniture, and fixtures appurtenant thereto, and U. S. Stewart, trustee, party of the second part, acting for himself and associates, witnesseth: That said parties of the first part do hereby agree and bind themselves to sell to the party of the second part and his associates, the said Angelus Hotel and all of the capital stock of the Bailey Hotel Company" (for a consideration named). * * * "The parties of the first part agree and bind themselves when the said title has been found satisfactory, to make, execute, and deliver all proper and necessary deeds of conveyance, warranty in form, to the parties of the second part, or their assigns, and to transfer all leases now in existence to any part or portion of the said premises. * * *"

So far as shown, Crawford did not thereafter execute any deed or other transfer, nor has the question of whether or not the improvement company (assignee of Stewart and associates) accepted the deed of January 29, 1907, executed alone by Bailey Hotel Company, as complete performance of the contract of January 12th, been solved by a jury finding. The contract therefor, upon the showing made, remains executorily in force as against Crawford binding him to "convey whatever interest he has in the Angelus Hotel * * * and the personal property, furniture and fixtures appurtenant thereto," etc.

It will be noted that in the deed to Crawford joint use and possession of any and all walls "of what is known as the Angelus Hotel, or any part thereof which will be adjacent to the lines hereinbefore drawn" (i. e., the surface boundary lines) is expressly provided for. This clearly relates to any wall located close or near to or in the immediate neighborhood of the ground boundary line, as well as any whose lines are coincident with that boundary, for such is the popular and technical import of "adjacent to." United States v. St. Anthony Ry. Co., 192 U. S. 524, 24 S. Ct. 333, 335, 338, 48 L. Ed. 548; 1 Cyc. 764. Those provisions of the deed, we think, amount to an expressed contractual recognition of the form and location of the entire building and its relation to all parts of the land, and of the right and purpose of its continuation in that form and relation, at least so long as its owner desired. The existence of that right and purpose was generally and obligatorily affirmed by Crawford, we believe, in the contract of January 12, 1907. And, in the absence of a showing of such fraud or mistake as would afford relief, the record now works estoppel against his denial. It results that Bailey Hotel Company had power to convey whatever it undertook to convey in the deed to the improvement company.

[8] The trial court submitted but one issue in any wise touching the question of the understanding and intention of the sellers in respect to what property and rights were being sold, and, as will be seen by reference to the issue as quoted above, the inquiry there made was confined to "the intention of L. M. Crawford." It is doubtful whether his intention, separately considered, was a material inquiry; but, if its materiality be conceded, the fact is that the court submitted no issue in relation to the intent and understanding of his associate parties in the contract of January 12, 1907, or of the grantor in the deed of January 29, 1907. In that situation we believe the improvement company had the right to submission of its special issue inquiring about the conduct of H. H. Bailey, who represented the grantor in the deed and Crawford as well, although the form of the question as framed might otherwise be subject to criticism.

[9] It may be thought that the subject-

matter of the issue requested by the improvement company upon the matter of the belief of Stewart and associates is included in the issue submitted by the court in reference to their intention. But, in view of the record, we believe the issue submitted is so general and confusing in form as not to preclude the right of the improvement company to have the issue requested by it submitted.

Accordingly, we recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that the cause be remanded.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded to the District Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.