946

MITCHELL et al. v. CASTELLAW et al.

No. 6583.

Court of Civil Appeals of Texas. Texarkana.

June 28, 1951.

Rehearing Denied Sept. 6, 1951.

Florence & Florence, Gilmer, D. S. Meredith, Jr., Longview, for appellants.

Fulton & Hancock, Edwin M. Fulton and Hollie G. McClain, Gilmer, for appellees.

HALL, Chief Justice.

This suit was instituted by appellees against appellants in the District Court of Upshur County for an injunction to restrain appellants from obstructing a strip of land 9′ wide east and west by 23′ long north and south and which lies adjacent to appellees' filling station on the west (now under lease to Magnolia Petroleum Company) and necessary to the operation thereof. Appellants answered with a general denial and plea of not guilty and by cross-action in the nature of trespass to try title to the 9′ x 23′ strip here in controversy and a 2½′ x 16½′ strip lying along the north side and adjacent to appellees' filling station. In their cross-action appellants allege further that appellees' filling station extended to the east 10 feet into a public street south and east of appellants' lot which "lessened" the value of the latter by obstructing the view from appellants' proposed building on their lot; and that this action of appellees constituted a nuisance. Appellants prayed for a mandatory injunction requiring appellees to remove the obstruction from the street and for title and possession of the two narrow strips of land mentioned above. Trial was to the court without a jury and resulted in judgment decreeing that appellees were the owners of an easement in the strip of land 9′ x 23′ lying adjacent to appellees' filling station on the west and permanently enjoined appellants from obstructing said strip of land. The judgment also awarded appellees a vested easement "for the use and benefit of their property adjacent and immediately south of appellants' lot," that the easement to this strip of land (2½′ x 16½′) to terminate "when said wash shed or wash rack is removed, for any reason or cause, from said property." The judgment decreed further: "That the relief sought by the defendants (appellants) in their cross-action against plaintiffs (appellees) be and the same is hereby denied."

Appellants contend by their first point that "where a deed embodies full covenants of warranty and also contains exceptions, conditions or reservations inconsistent with the interest granted and tend to destroy it, such exceptions, conditions and reservations are invalid and void."

The filling station here involved is located on the southeast corner of Block No. 42, in the City of Gilmer, and lies along Trinity Street on the east and Tyler Street on the south. The filling station was built about 1922, and has been under lease to the Magnolia Petroleum Company for many years. The 9′ x 23′ strip of land which was the basis of appellees' suit for injunction lies west of and adjacent to the filling station owned by appellees. At the time the filling station was constructed, Mrs. Sallie Stapp, mother of appellee Mildred Castellaw, and from which appellee derived her title to the filling station, owned the property on which the filling station was constructed as well as the lot immediately west of the filling station property. In March, 1938, Mrs. Stapp by general warranty deed conveyed the lot immediately west of the filling station to Malcolm Smith. The deed reads as follows:

"That I, Mrs. Sallie Stapp, a widow, of the County of Upshur, State of Texas, for and in consideration of the sum of One Thousand and no/100 Dollars to me in hand paid by Malcolm Smith and wife Blynn Smith as follows: Cash in hand the receipt of which is hereby acknowledged and confessed, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said Malcolm Smith and wife, Blynn Smith, of the county of Upshur, State of Texas,

"All that certain portion of Block 42 of the City of Gilmer, Texas, as shown by the plan and plat of said city which is located in Upshur County, Texas, as described below:

"Beginning 67 feet 4½ in. W of S. E. corner of Block 42 on Tyler Street, same being the S. E. Corner of Judie Barnwell's lot;

Thence N 59 feet;

Thence E 29 feet;

Thence S 59 feet;

Thence West 29 feet to place of beginning.

"It is expressly agreed and understood that grantors, their heirs or assigns, shall not build or permit any one else to construct any type of building or anything else on the portion of lot described as follows; and that grantor shall have the right to use this part of said lot as a driveway:

"Beginning at the S. E. corner of above described lot;

Thence west 9 feet;

Thence North 23 feet;

Thence east 9 feet;

Thence South 23 feet to place of beginning.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Malcolm Smith and wife, Blynn Smith, their heirs and assigns forever and I do hereby bind myself and my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said Malcolm Smith and wife, Blynn Smith, their heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

"Witness my hand at ———— this 28th day of March, 1938.

"(S) Mrs. Sallie Stapp."

On November 20, 1947, Malcolm Smith conveyed this same property to appellants. In that deed was the same reservation as in the deed from Mrs. Stapp to him with the exception that the word "grantors" as first used in said reservation was changed to "grantees."

It is undisputed that the property, that is the 9′ x 23′ strip, is used in connection with the filling station for ingress and egress thereto. Malcolm Smith, who purchased the property from Mrs. Stapp, leased the filling station from the Magnolia Petroleum Company and used this strip of land in connection with the filling sta-

tion, at the very time he owned the lot out of which the said strip was reserved. So far as this record shows this strip of land was used in connection with said filling station until it was obstructed by the appellants herein, which caused the institution of this suit by appellees.

■ It is appellants' contention, as shown by their point above, that the reservation is inconsistent with the interest granted and tends to destroy it. In other words, the reservation is repugnant to the grant to such an extent that it becomes void. We do not agree with this contention. As we view it, it is a simple reservation by the owner of an easement on this portion of the lot conveyed, for the use and benefit of the grantor Mrs. Stapp, in connection with her filling station. It in no wise destroys the grant to Malcolm Smith of the title to the remainder of the lot but merely burdens the lot with the reserved right of use to the 9' x 23' strip. The method used by Mrs. Stapp is now in common use in dealing with oil and gas bearing lands in this state. "There is no repugnancy between a conveyance of the fee and a reservation of an easement affecting the land conveyed." 18 C.J., p. 347, Sec. 351; See also 26 C.J.S., Deeds, § 140.

■ "It is perfectly legal for parties to contract and place in their deeds certain reservations or exceptions for the use and possession of the conveyed premises as a part of the consideration thereof to be enjoyed by the grantor, his heirs and assigns, for a stated period of time. This is done constantly, and the books are full of such illustrations, supporting them." Word v. Kuykendall, Tex.Civ.App., 246 S.W. 757, 759. Possibly the leading case in this state on this point is Hansen v. Bacher, 299 S.W. 225, 226, by the Commission of Appeals (opinion adopted by the Supreme Court), which reads in part: "If the clause under consideration is repugnant to the grant of the deed, then it must fall, and the instrument must be held to be what it otherwise would be, *an absolute conveyance of the fee-simple title.* This would imply a covenant for im-

mediate possession. We are of the opinion the clause amounts to a reservation and is in no wise repugnant to the grant. That reservations may be made from valid grants does not admit of dispute. The purpose of a reservation is to save to the grantor something that otherwise would pass by the grant, so that, in a sense, every reservation may be said to be repugnant to the grant, but this is not true in any legal sense, but only in the popular understanding. In truth, unless the grant conveys the right reserved, there is no place or necessity for a reservation at all. Reservations are freely allowed unless the right reserved is repugnant to the grant. There is no repugnance unless the reservation attempts to destroy the grant in whole or in part, and, if given force, would necessarily have that effect. It is not required to show a repugnancy that the attempted reservation be as broad as the grant, but it must be as specific. The repugnancy may be in part only. Undoubtedly the grant here, without any reservation, would carry the right of immediate possession, but the grant is general, and this right of immediate possession is by implication and is not specific. If the grant expressly covenanted for the right of immediate possession, then the attempted reservation, also expressly retained, would necessarily contradict the grant, be repugnant thereto and would fall. This rule of construction is but an artifice adopted in the judicial search for the real intention of the parties, which is paramount in every inquiry. *If the grant is general, and the reservation is specific, it is evidence of the intention of the grantor to limit the grant, by this carving out,* whereas, if it is a specific grant of a right or thing, the subsequent reservation of the same right or thing is contradictory and repugnant to the intention first clearly expressed, and, under a well-known rule of construction, will be held for naught, for it thwarts the expressed intention of the grantor. See Associated Oil Co. v. Hart, (Tex.Com.App.) 277 S.W. 1043." (Emphasis ours.)

So, in our opinion the reservation of the strip of land 9' x 23' is not repugnant to

the grant. Mrs. Stapp not only owned the lot she was conveying to Smith but the filling station lot as well, and she had a perfect right to reserve a passage-way to her filling station over the 9′ x 23′ strip lying adjacent to her filling station. We think the deed taken as a whole admits of such construction and shows that it was the intention of the parties at the time the deed was executed that Mrs. Stapp was reserving the narrow strip as a passage-way to her filling station. This intention is also shown by the fact that Smith after he bought the property west of the filling station from Mrs. Stapp containing the reservation, used and occupied the filling station as a sub-lessee of the Magnolia Petroleum Company for many years and used this very strip of land in connection with the filling station. As further evidence of the intention of the parties, when Mr. Smith sold this property to appellants he included in the deed the same reservation as in the deed from Mrs. Stapp to him nine years before. This point presents no error.

■ With respect to the 2½′ x 16½′ strip of land lying north of and adjacent to the filling station property, it appears that at the time Mrs. Stapp owned both the filling station lot and the lot immediately north of it, and while the filling station was subleased to Malcolm Smith, he (Smith) constructed a wash rack on this narrow strip to the north of the filling station lot, and used the wash rack in connection with the filling station during the time he operated it. When the lot to the north of the filling station was later sold the wash rack located on the lot was visible to all parties and as said above, was in use by Malcolm Smith in connection with the filling station property. The wash rack was located north of the artificial boundary line betweeen Mrs. Stapp's two lots, and, no doubt, was and is necessary to the proper operation of the filling station. Needless to say, Mrs. Stapp at the time she owned the lot to the north had the right to encroach upon it to the extent of 2½′ in width by 16½′ in length to permit a wash rack to be constructed thereon to be used in connection with the filling station. In the deed from her conveying the north lot no mention is made of the 2½′ x 16½′ strip, with respect to reserving same for the benefit of the filling station lot. It is contended in this connection by appellees that the wash rack being located upon the north lot at the time of the sale the party purchasing same took the lot burdened with an implied easement covering the strip of land upon which the wash rack was located at the time of their purchase. We agree with this contention. The trial court found in its judgment that the strip of land should remain undisputed as an easement attached to the filling station lot so long as it is used in connection with the filling station. We think the trial court's holding is correct and is supported by the following authorities: El Paso Land Improvement Co. v. Crawford, Tex. Com.App., 292 S.W. 518; Scarborough v. Anderson Brothers Construction Co., Tex. Civ.App., 90 S.W.2d 305; and cases there cited.

■ Point two advanced by appellants has to do with the alleged 10-feet extension of appellee's filling station into a public street in the City of Gilmer. On the trial below appellees urged an exception to that portion of appellants' cross-action covering this phase of their case, which was sustained by the trial court, and no exception was reserved by appellants to the action of the trial court in this respect. This being true, point two finds no basis in the record and is overruled.

The judgment of the trial court is affirmed.