**BARRICK v. GILLETTE.**

No. 2509.

Court of Civil Appeals of Texas.  Eastland.
April 6, 1945.

Rehearing Denied May 11, 1945.

Fred O. Jaye, of De Leon, and W. D. R. Owen, of Eastland, for appellant.

Oscar Callaway, of Comanche, for appellee.

GRISSOM, Justice.

W. D. Gillette instituted this suit against Grady Barrick for the purpose of estab-

·lishing an easement over a corner of defendant's land and to obtain an injunction restraining defendant from obstructing said right of way. Plaintiff alleged he was the owner of a 110 acre tract of land that he purchased from W. J. Hart; that prior to plaintiff's purchase Hart owned said 110 acre tract and also owned and occupied a 100 acre tract which adjoined said 110 acres on the east; that there was then a gate in a division fence separating said tracts, giving ingress and egress to said 110 acre tract, which gate was reached by a used road across ·the northwest corner of the 100 acre tract on the east occupied by the Harts and thereafter sold to Barrick. That said road was the only opening permitting ingress and egress by the Harts to a lane running north of the 100 acre tract. That said road was obvious and known and understood by the parties to· be the only route by which Gillette (who· owned and occupied a 32 acre tract adjoining the northeast corner of the 100 acre tract then owned and occupied by the Harts and later sold to Barrick) could travel from the 110 acre tract to a lane along the north side of the 100 acre tract. That Gillette's 32 acre tract adjoins the Beaty and Comanche road. That the road in controversy, running from near the northeast corner of Gillette's 110 acre tract across the northwest corner of Barrick's 100 acre tract, was the only means of ingress and egress open to the plaintiff. That the defendant, Barrick, had built a fence across said opening.

Gillette further alleged that Hart sold the 110 acre tract to him with said means ·of ingress and egress, and that it was the only means of ingress and egress to said property, and that Hart was thereby bound to furnish plaintiff a right of way or easement across the 100 acre tract of land ·owned by Hart at the time he sold the 110 ·acres to plaintiff. Plaintiff alleged that Hart's 100 acre tract, adjoining plaintiff's 110 acre tract on the east, purchased by Barrick from the Harts, was purchased by Barrick with the opening, road and means ·of ingress and egress open and obvious at the time and that "the same comes to the plaintiff impressed with the liability of said ingress and egress into and out from said property, (and) must necessarily come from the said Hart and wife against said land ·as a part and parcel of his said purchase ·*· * *." Plaintiff alleged that after plaintiff's purchase of the 110 acre tract on the west the Harts "later" conveyed the 100 acre tract adjoining it on the east to Barrick, "with the road the only opening and only means of ingress and egress regularly used and occupied by the plaintiff, and it was known ·and understood to be used by the plaintiff at the time said defendant purchased the same."

Plaintiff alleged that Barrick by stopping plaintiff from using the road across the corner of his land had caused him to suffer damages. He prayed for an injunction restraining Barrick from interfering with his use of the road and for a judgment "fixing said easement and right of ingress and egress permanently * * *." There were no exceptions to plaintiff's petition.

Defendant denied that there was such a road across his land as alleged by plaintiff. Defendant alleged plaintiff attempted to purchase a road across defendant's land, but was unable to pay therefor; that plaintiff was seeking a "prescriptive right" across defendant's land for his own use and benefit; that when plaintiff purchased the 110 acre tract from the Harts he did so knowing that no convenient means of ingress and egress from the 35 acre tract then owned by plaintiff was available to him; that plaintiff offered to pay his grantor, Hart, $100 in excess of the purchase price of the 110 acres for a right of way across the tract now owned by Barrick, which was refused by Hart, but that Hart deducted $100 from the purchase price of the tract sold to plaintiff, and that plaintiff is estopped to claim a "prescriptive right" across defendant's land.

The cause was submitted to the jury on one issue, which issue and the definition given in connection therewith are as follows:

"Do you find from a preponderance of the evidence in this case that the road closed by the defendant was the only practical way of egress and ingress to and from the properties of the plaintiff described (in plaintiff's) petition?

"By the term 'practical' as used in the preceding issue, is meant that the road must be adequate and reasonably convenient to meet the necessities of the person entitled thereto."

The jury answered said issue "Yes."

Defendant filed a motion for judgment notwithstanding the verdict upon the following grounds: (a) that there had been a merger by unity of title to the dominant and servient estate. That Hart on April

3, 1944, owned the 100 acre tract now owned by Barrick and the 110 acre tract now owned by Gillette. That on said date Hart conveyed the "alleged former dominant estate" to Gillette, but did not by his deed to Gillette convey or attempt to convey an easement over the alleged servient estate now the property of Barrick. (b) That there had been a merger by unity of title to the dominant and servient estates. That title to both tracts was in Hart on April 3, 1942, when Hart conveyed the "alleged former servient estate" to Barrick but did not in such conveyance expressly reserve the alleged easement involved in this suit. (c) That by the expenditure of a reasonable amount of money, plaintiff's property could be made as accessible to a public highway as it is by the use of the alleged way involved in this suit. (d) That at the time the 110 acres was conveyed by Hart to Gillette it was agreed between them that no easement could be had across the 100 acres "because same had been sold to Grady Barrick * * * and he would not agree to such easement" and because no such easement could be given, it was agreed that $100 would be deducted from the agreed price Gillette was to pay for the 110 acre tract. (e) That said alleged easement is one of mere convenience and not of strict necessity, "there being a way of ingress and egress to and from the alleged dominant estate, clear and open, from the west, and by the expenditure of a reasonable amount of money, a way of ingress and egress can easily be opened from the road or highway on the north of said alleged dominant estate, and another easement, a way of ingress and egress to and from said alleged dominant estate can easily be opened, by the expenditure of a reasonable amount of money, from the southeast of said alleged dominant estate." (f) That the alleged servient estate was conveyed to Barrick with covenants of warranty without reservations of an easement on the 3d of April, 1944, "before" Hart conveyed the alleged dominant estate to Gillette.

Defendant concluded that because of such allegedly undisputed evidence no issue of fact was raised and a directed verdict should have been given.

Defendant also filed a motion for new trial. The motion for a new trial asserted the verdict was contrary to the law because plaintiff had not alleged (1) facts showing "a way of necessity" nor "a privity of own-ership between plaintiff and defendant"; (2) that the verdict was contrary to the facts because it was undisputed that defendant did not purchase from the plaintiff, or vice versa, thereby showing there was "no privity of contract between plaintiff and defendant." (3) That the undisputed evidence disclosed that no "way of necessity exists". (4) That the undisputed evidence showed the easement sought a "way of convenience, and not a right of way of absolute necessity." (5) That the evidence did not raise an issue as to the existence of an "easement by prescription". (6) That the evidence showed conclusively that when plaintiff purchased he knew there was a community road, which he would necessarily have to travel, a few miles from plaintiff's 32 acre tract to reach his 110 acre tract, and (7) that the former use of the way in controversy was permissive only. Both of said motions were overruled. Judgment was rendered for plaintiff, establishing an easement over defendant's land and enjoining defendant from interfering therewith. Defendant has appealed.

Much of the statement of facts is meaningless for the reason that in the interrogation of witnesses there was a reference to maps or plats not in the record before this court. However, as we understand the location of the respective tracts of land and the facts immediately connected with the sale of the two tracts by Hart to the plaintiff and the defendant, respectively, Gillette then owned a 32 acre tract, a part of which adjoins the northeast corner of the 100 acre tract sold to Barrick. Gillette's 32 acre tract projects further north than Barrick's 100 acre tract; that the 110 acres sold to Gillette lies directly west of Barrick's 100 acre tract; that the lane on the north side of Barrick's 100 acres is intersected at the northeast corner of Barrick's 100 acre tract by the Comanche-Beaty road, which runs north from said point; that formerly said lane extended to the northeast corner of Gillette's 110 acre tract, but that there is a deep gully across said lane shortly before it reached the Gillette tract; that there was once a bridge across this gully, which washed out many years ago; that said lane theretofore had been maintained by the county, but that the west end of said lane and the bridge had been abandoned and the only established direct route which could be travelled by Gillette in going from his 32 acre tract on which he lived to his 110 acre tract

necessitated the use of the road across the northwest corner of Barrick's 100 acre tract.

There was evidence that plaintiff could travel from his 32 acre tract to his 110 acre tract by going north down the Comanche-Beaty road to the Sweetwater Store, and thus reach the 110 acre tract without going across Barrick's land. As we understand the record, however, there was evidence that this and all other means of ingress and egress suggested by the testimony, except the method next hereinafter mentioned, would have required Gillette to pass through gates across the private property of other persons who could at any time withdraw permission for the use of their land. There was evidence that Gillette could enter that portion of the lane which had been discontinued near the northeast corner of his 110 acre tract from said property without traveling over Barrick's land and with considerable expense and trouble make a road and build a bridge that would permit him to get into that part of the lane running along the north side of Barrick's 100 acre tract of land, and thus travel from one of his tracts to the other. There was evidence that to go by the Sweetwater Store would necessitate traveling over a poor road a distance of 6 miles. There was also evidence that the owner of the land adjoining Gillette's 110 acres on the west had refused to let Gillette travel over his land; that the only way Gillette could travel from one of his tracts to the other, without going over Barrick's land, would be to travel the Beaty road to the Sweetwater Store; that at the Sweetwater Store it was necessary to go through a gate and across private property; that said road is not a public highway; that traveling said route would require that plaintiff go through four gates, and that he would have to cross "at least half a dozen private properties." That such roads were "subject to being closed at any time." There was evidence that Gillette in going from one tract to the other, unless he traveled along the lane north of Barrick's 100 acre tract and across its northwest corner, if he went by Comanche, would have to travel a distance of 12 miles. That if he went by the Sweetwater Store he would have to travel a distance of 5 or 6 miles and would have to cross the land of five different people. There was evidence that a road along the south side of the land owned by plaintiff and defendant could not be built; that the

sand was too deep; that it blew and the trees were very thick; that it was suitable only for a cattle trail. The evidence is undisputed that Hart delivered deeds to plaintiff and defendant on the same day. There is a dispute as to which actually bought first.

The verdict and judgment being for the plaintiff, we are required to view the evidence in the light most favorable to him and our statement relative to the evidence is made from that viewpoint. In considering the sufficiency of the evidence to sustain the findings we are required to disregard all evidence adverse thereto and consider only evidence favorable to the findings, indulging every legitimate conclusion which tends to uphold such findings. Ward v. Bledsoe, Tex.Civ.App., 105 S.W. 2d 1116, 1117; Ross v. Houston Oil Fields Ass'n, Tex.Civ.App., 88 S.W.2d 586, 591; Walker-Smith Co. v. Whaley et al., Tex. Civ. App., 185 S.W.2d 614, 615; Anderson v. Smith, Tex.Civ.App., 231 S.W. 142, 143 (writ ref.); International-Great Northern R. Co. v. Acker, Tex.Civ.App., 128 S.W.2d 506, 525.

Defendant's motion for judgment notwithstanding the verdict was overruled. A judgment based on such a motion would necessarily have been based upon a finding of no evidence. Rodriguez v. Higginbotham, 138 Tex. 476, 160 S.W.2d 234. There may have been no evidence to support a judgment for plaintiff on the theory that plaintiff had acquired an easement by prescription or a way of necessity. But the rules governing "the implication of an easement from the use made of the premises by the common grantor have no application to the implication of ways of necessity. The rule requiring that an easement be apparent and continuous as a requisite to a grant or reservation thereof by implication does not apply to a way of necessity." 28 C.J.S. Easements, § 35, p. 697. After a most careful consideration of the record, we have concluded that the evidence was sufficient to raise an issue of fact as to whether or not when Hart (who owned both the Gillette and Barrick tracts of land and permitted the use of the road across the corner of the 100 acre tract for the benefit of the 110 acre tract now owned by Gillette) conveyed the 110 acre tract to Gillette he impliedly granted and conveyed to Gillette an easement across the Barrick 100 acre tract. "Where the owner of an entire tract of land or of two or more adjoining parcels

employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication." 28 C.J.S. Easements, § 31, p. 687. See also 15 Tex.Jur. 780; 17 Am.Jur. 945 et seq.; Howell v. Estes, 71 Tex. 690, 12 S.W. 62; Miles v. Bodenheim, Tex.Civ.App., 193 S.W. 693, writ ref.; Missouri-Kansas-Texas R. Co. of Texas v. Cunningham, Tex.Civ.App., 273 S.W. 697, 701; 7 Tex. Law Rev. 292; 15 Tex. Law Rev. 553.

As we understand the record, the court attempted to submit an issue as to whether there was an implied grant of an easement over Barrick's 100 acre tract. The element of necessity was submitted and answered favorable to plaintiff. The element of necessity is a component part of the controlling issue or ground of recovery in a case where the establishment of an easement implied from the use made of adjoining tracts of land by a common grantor is sought to be established. While the definition is not approved, it appears to be more nearly applicable and appropriate where said type of an easement is involved than it would be to any other. The degree of necessity requisite to establishment of such an easement is "such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." 28 C.J.S. Easements, § 33, p. 692. See also Howell v. Estes, 71 Tex. 690, 694, 12 S.W. 62; 17 Am.Jur. 955; 34 A.L.R. 234; Leathers v. Craig, Tex.Civ.App., 228 S.W. 995, 999. For other elements of such a cause of action, see 28 C.J.S. 691, Easements, § 33. There was no objection to the manner of submission. There was evidence sufficient to report a finding for plaintiff on that issue. Since other elements of plaintiff's cause of action were not submitted, we are required to presume they were found by the trial court in such manner as to support the judgment rendered. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 190, 166 S.W.2d 904; Wichita Falls & Okl. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; 3 Tex. Jur. 1066, sec. 752; Powell v. Wiley, 141 Tex. 74, 170 S.W.2d 470, 472; McKee v. Reed, Tex.Civ.App., 166 S.W.2d 353, 358 (writ ref.); 18 Tex. Law Rev. 453; Vanover v. Henwood, 136 Tex. 348, 351, 150 S.W.2d 785; Texas Employers Ins. Ass'n v. Miller, 137 Tex. 449, 454, 154 S.W.2d 450.

As we understand the record, the judgment does not rest upon a finding or adjudication of the existence of an easement by prescription or of a way of necessity. See Brundrett v. Tarpley, Tex.Civ. App., 50 S.W.2d 401; 28 C.J.S. Easements, § 35, p. 697; McWhorter v. Holcomb, 200 Ky. 498, 255 S.W. 130, 131. There was no merger by unity of the title to the alleged dominant and servient estates established as a matter of law. 28 C.J.S. Easements, §§ 35, 57, pp. 697, 720 and 722. Whether by expenditure of a reasonable amount of money plaintiff's property could be made accessible to a public highway without the use of defendant's land, if material here; whether at the time of the conveyance to Gillette it was agreed between Hart and Gillette that Gillette was to have no easement over the land conveyed to Barrick, and the like, were questions of fact and not matters conclusively established by the evidence. Defendant did not request the submission of any issue. He thereby waived any right to complain that the court did not submit defensive issues. See Texas Rules of Civil Procedure, rule 279; Ferguson v. Parker, Tex.Civ.App., 176 S.W.2d 768, 770, writ ref.; Rules of Civil Procedure, rule 67; Harris v. Harris, Tex.Civ.App., 174 S.W.2d 996, 999, 1000; Rules of Civil Procedure, rule 274; Traders & General Ins. Co. v. Garry, 135 Tex. 290, 295, 143 S.W.2d 370. All defects in the manner of submission were waived by failing to except thereto. Rules of Civil Procedure, rule 272. The judgment is affirmed.