Harris R. FENDER, Appellant,

v.

Enis SCHADED, Appellee.

No. 291.

Court of Civil Appeals of Texas.

Tyler.

Oct. 19, 1967.

Rehearing Denied Nov. 16, 1967.

LeRoy LaSalle, Carthage, for appellant.

Ramey, Brelsford, Flock & Devereux, Jack Flock, Michael A. Hatchell, Tyler, for appellee.

MOORE, Justice.

Plaintiff, Enis Schaded, brought this suit against defendant, Harris R. Fender, for title and possession of a one-acre tract of land lying in the Isaac Renfro League in Smith County, Texas, and also sought judgment to enjoin defendant from interfering with his use of a certain roadway leading north from the said one-acre tract across defendant's intervening land for a distance of 290 feet to Texas Farm Road No. 850. Prior to trial, defendant disclaimed as to any interest in the said one-acre tract, but denied that plaintiff or his predecessors in title had acquired any right to a use of a roadway across his land.

For cause of action for injunctive relief, plaintiff alleged that in 1922, Maryann Warren was the owner of a 119½ acre tract of land in the Isaac Renfro League and that on December 8, 1922, she conveyed one acre out of said tract to Tull Choice, plaintiff's predecessor in title; that at the time of the said conveyance, there was a roadway from Texas Farm Road No. 850, leading in a southerly direction across the Warren tract to the one-acre tract which she conveyed to Tull Choice. Plaintiff further alleged that the sale of the said one-acre tract, out of the larger tract, prior to the time Maryann Warren conveyed the remainder of the tract to the defendant's predecessor in title, was made under circumstances which created an easement by implied grant entitling plaintiff to use the roadway across defendant's land to said

Farm Road No. 850. His prayer was for an injunction enjoining defendant from fencing said one-acre tract or from interfering with plaintiff's use of the roadway. From a judgment granting the injunctive relief as prayed for, defendant perfected this appeal.

The facts established by the court's findings, insofar as material, may be thus summarized:

On December 8, 1922, Maryann Warren, defendant's predecessor in title, owned a 119½ acre tract of land in the Isaac Renfro League. The North side of the tract was bounded by a public road known as the Old Overton Road, which has since been designated as Texas Farm Road No. 850. On said date, and prior thereto, there was a roadway across the land which commenced at the Old Overton Road and ran across the tract in a Southerly direction. On said date, Maryann Warren conveyed Tull Choice, plaintiff's predecessor in title, a one-acre tract of land out of the above mentioned tract. The one-acre tract conveyed was situated upon the roadway and lay approximately 290 feet South of the Old Overton Road.

At the time of the conveyance, the roadway between the Old Overton Road and the one-acre tract was approximately 25 to 28 feet in width and was being used continuously as a means of ingress and egress from the Old Overton Road to said one-acre tract and that such conveyance was made with the understanding that the roadway would be used as a means of ingress and egress from the Old Overton Road to the one-acre tract. Prior to the grant, Tull Choice owned an 84.07 acre tract of land in the B. C. Walters Survey which adjoined the one-acre tract on the south. Thus, the one-acre tract was bounded on the north, east and west by property owned by Maryann Warren and on the south side by the property owned by Tull Choice in the B. C. Walters Survey. At the time of the grant, the roadway was well-marked on the ground and was being used as a means of ingress and egress from the Old Overton Road to the one-acre tract and across the one-acre tract to the adjoining property owned by Tull Choice in the Walters Survey. After acquiring the one-acre tract, Tull Choice built a house thereon, which was occupied by him and others until the same was torn down in 1963. Tull Choice and others used the roadway leading from the one-acre tract to the Old Overton Road continuously, open and visibly as a means of ingress and egress, and such means of ingress and egress to the said one-acre tract was and has been a most feasible method of reaching the one-acre tract from the Old Overton Road which is the nearest public roadway. By mesne conveyances from Tull Choice, the title to the one-acre tract, as well as to the 84.07 acre tract in the B. C. Walters Survey became vested in the plaintiff on February 8, 1956, at which time he continued to make use of the roadway as a means of ingress and egress to the one-acre tract. By mesne conveyances from Maryann Warren, defendant, on or about September 22, 1961, and on various subsequent dates, acquired title to the Maryann Warren tract in the Renfro League save and except the one acre in question. In the latter part of 1963 and early 1964, defendant caused to be erected a fence on the south boundary line of the Renfro League, thus separating the one-acre tract from plaintiff's 84.07 acre tract in the B. C. Walters Survey and preventing plaintiff access thereto. Defendant also closed the roadway to the one-acre tract by erecting a fence along the south side of the Old Overton Road (Farm Road No. 850). The trial court further found that at all times since 1922, the said road had been visible on the ground and had been continuously in use as a means of ingress and egress until defendant erected the fence across the road. The court also found that the use of the roadway was necessary to the use of the one-acre tract and not a mere convenience; that such necessity had existed since December, 1922, and that the plaintiff had no other means of reaching his one-acre tract without trespassing upon the property of others and that there had been no abandonment of the roadway.

In the conclusions of law, the court found that defendant had no right to place a fence along the south boundary line of the one-acre tract and that he should be required to remove the same. The court further found that at the time of the grant of said one-acre tract from Maryann Warren to Tull Choice, there was granted by implication an easement appurtenant in favor of said one-acre tract as the dominant estate for the use of the roadway, as means of ingress and egress from Farm Road No. 850 (Old Overton Road) to plaintiff's one-acre tract and that the defendant's lands, as the servient estate, were burdened with such easement appurtenant and defendant had no right to fence or enclose the same or to do any act which would prevent the free use of said roadway as a means of ingress and egress by the dominant estate.

Defendant contends first that the judgment must be reversed because there was no evidence showing a necessity for an implied easement over the roadway in question. In this connection, defendant takes the position that plaintiff was required to prove "strict" or "absolute" necessity. He therefore argues that since there was some evidence showing that at the time of the grant, the road in question extended not only from the Old Overton Road (Farm Road No. 850) in a southerly direction to the one-acre tract, but continued across the 84.07 acre tract in the B. C. Walters Survey and connected with other roads south of said survey and finally connected with the Henderson Highway, the roadway claimed by the plaintiff over the Maryann Warren tract was not a necessity, but a mere convenience and therefore plaintiff failed to prove that he was entitled to an easement under the requirements set forth in Bains v. Parker, 143 Tex. 57, 182 S.W.2d 397 and Duff v. Matthews, 158 Tex. 333, 311 S.W.2d 637.

Plaintiff, on the other hand, contends that since his cause of action and the judgment based thereon is based upon an implied easement appurtenant to the grant, he was not required to show an absolute necessity, but was only required to show that the easement was reasonably necessary for the convenient and enjoyable use of the property as it existed when the severance was made.

It is now recognized that there is a distinct difference in the proof required to establish a way by necessity and that required to establish an implied easement appurtenant. 28 C.J.S. Easements § 35, page 697; Barrick v. Gillette, (Tex.Civ.App.), 187 S.W.2d 683.

As we understand it, the judgment does not rest upon a finding or adjudication of the existence of an easement by way of necessity. Therefore, the cases cited by defendant do not appear to be in point. The judgment specifically decreed that the plaintiff, was entitled to an "easement appurtenant upon and across the land of the defendant." Nothing is said therein with reference to a way by necessity. The judgment further recited that "any relief sought herein by either party, unless expressly granted herein, is denied." As we view it, the judgment is based solely upon the finding of an implied easement appurtenant and not upon a finding of an easement by way of necessity. Our remarks will therefore be limited to that theory of recovery.

In discussing the principle of an easement appurtenant, the Supreme Court of this state in Ulbricht v. Friedsam, 159 Tex. 607, 325 S.W.2d 669, said:

" * * * The correct rule of law governing this phase of this case is stated in 28 C.J.S. Easements § 31, p. 687, et seq., as follows:

'Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.' "

The case of Drye v. Eagle Rock Ranch, 364 S.W.2d 196, (Tex.Sup.Ct., 1963), cited by both parties, lays down four essential elements necessary to the establishment of an implied easement appurtenant, to-wit: (1) there must have originally been unity of ownership of the dominant and servient estate; (2) the use of the easement must have been apparent at the time of the grant; (3) the use of the easement until the time of the grant must have been continuous and so conspicuous as to indicate permanence; and (4) the easement must be reasonably necessary to a fair and enjoyable use of the dominant estate.

■ In passing upon whether or not there is any evidence in the record to support the court's finding upon each of the foregoing elements, we are required to disregard all evidence adverse thereto and consider only evidence favorable to such findings, indulging every legitimate conclusion which tends to uphold the findings, and judgment based thereon. Brown v. Frontier Theaters, Inc., 369 S.W.2d 299, (Tex. Sup.Ct.); Barrick v. Gillette, supra, (citing cases).

■ It is without dispute that Maryann Warren was the original owner of both the dominant and the servient estates. Without attempting to detail the testimony of each witness, suffice it to say that several witnesses testified that they were familar with the road at the time of the conveyance of the one-acre tract; that the road was in existence at that time and was being used by the public. These and other witnesses testified that the roadway was used continuously, both before and after the grant. There was also testimony showing the road had been in use at all times subsequent to the grant until the time of trial, and that same was visible upon the ground, being approximately 24 to 28 feet in width. Although the evidence is not without dispute, we believe there was evidence of probative force to sustain the finding that the roadway was at all relevant times both apparent and continuous. Wells v. Yarbrough, 84 Tex. 660, 19 S.W. 865. The only question remaining is whether use of the roadway was necessary to the use of the dominant estate.

■ In implying an easement by grant, our courts have adopted the rule of reasonable, rather than strict, necessity. Scarborough v. Anderson Bros. Const. Co., Tex. Civ.App., 90 S.W.2d 305, 310 (citing cases).

■ The degree of "necessity" required to establish an easement by implied grant is merely such as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. 28 C.J.S., Easements § 33, p. 692; Howell v. Estes, 71 Tex. 690, 694; 12 S.W. 62; Miles v. Bodenheim, (Tex.Civ.App.), 193 S.W. 693; Barrick v. Gillette, supra; Drye v. Eagle Rock Ranch, Inc., supra; Bickler v. Bickler, 403 S.W.2d 354, (Tex.Sup.Ct.).

"The basis of the general principle as to the implication of an easement from a pre-existing use is the presumed or probable intention of the parties to the conveyance, as disclosed by all the circumstances surrounding the transaction. A presumption frequently invoked is that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction. Whether an easement arises by implication, however, must depend upon such matters as the extended character of the user, the nature of the property, the relation of the separated parts to each other, and the existing degree of necessity for giving such construction to the conveyance as will give effect to what may be supposed to have been, considering the manner of use, the reasonable intendment of the parties. * * *" 25 Am.Jur.2d, Sec. 28, p. 442.

■ Defendant insists that in view of the undisputed testimony in the record showing that at the time of the grant the roadway in question did not stop at the one-acre tract, but extended in a southerly direction and eventually connected with a public road

known as the Henderson Highway, the evidence conclusively shows that another access was available at the time of the grant and therefore the trial court's finding of "necessity" is not supported by the evidence. The testimony in this connection shows that the roadway extending south of the one-acre tract was known as a "plantation" road. It ran south across unenclosed lands owned by others and eventually connected with the Henderson Highway at a distance of approximately 3½ to 4 miles from the one-acre tract. While such evidence appears to be without dispute, the evidence also shows that the one-acre tract was situated near the north end of the roadway only 290 feet south of the public road known as the Old Overton Road. It must be presumed that the parties contracted with circumstances in mind. Moreover, the witness Marthalean Choice, daughter of Tull Choice, the grantee in the deed, testified that she was familiar with the transaction in which her father traded Maryann Warren an acre of land in exchange for the one acre in question and that the purpose of the trade was to afford Tull Choice access to the Old Overton Road. This testimony, together with the fact that the one-acre tract was situated in close proximity to the Old Overton Road and was conveyed in such a manner that it would be situated upon the roadway in question, would be sufficient evidence to support the finding that parties intended that the grant include the right to use the road as well as the finding that such use was reasonably necessary to the convenient and comfortable enjoyment of the property. When viewed in a light most favorable to the plaintiff, we have concluded that the evidence is sufficient to support the judgment unless other contentions made by the defendant are sustainable.

■ One of these contentions is that the court's finding that the easement had not been abandoned is not supported by the evidence. We overrule this contention.

■ The term "abandoned" generally means a relinquishment of the possession of a thing by the owner with the intention of terminating ownership, but without vesting it in anyone else. It is a question of fact to be ascertained from all the facts and circumstances. Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922; Woodman of the World Camp No. 1772 v. Goodman, (Tex. Civ.App.), 193 S.W.2d 739.

■ While there is some evidence in the record showing that the roadway had, over a period of time, grown up in weeds and bushes, there was other testimony showing that it remained open and visible at all times and that the various owners of the one-acre tract continuously used it as a means of ingress and egress. At most, the testimony in this respect was conflicting and under such circumstances it is well settled that this Court is bound by the findings made by the trier of the fact.

■ Another contention made by defendant is that the judgment is erroneous because he contends that the evidence conclusively establishes that he was a bona fide purchaser without notice of the easement.

In 28 C.J.S. 713 Easements § 49, it is stated:

"The law imputes to a purchaser such knowlege as he would have acquired by the exercise of ordinary diligence. * * * The Grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the Grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use. * * *"

■ Here again, the evidence is conflicting upon the question of whether or not the roadway was apparent on the ground and also as to whether or not defendant had knowledge of facts sufficient to put a prudent buyer on inquiry as to the existence of an easement. There is testimony in the record to the effect that at the time defendant purchased the servient estate, the roadway

was open and visible. Such testimony, we think, was sufficient to support the court's finding in this respect.

By other points of error, the defendant challenges the judgment on the ground that same is against the overwhelming weight and preponderance of the evidence. Each of those points, together with the other points not discussed herein, have been carefully considered and found to be without merit and are accordingly overruled.

Finding no reversible error, the judgment of the trial court is affirmed.